WO

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Charlie Gahn, dba Olde Tymers Restaurant,<br><br>    Plaintiff,<br>v.<br><br>Columbia Casualty Insurance Company, et al.,<br><br>    Defendant. | CV 03-630 TUC DCB<br><br>**ORDER** |

This action was filed on November 28, 2003, in state court. Plaintiff sought to compel arbitration of an insurance claim. The case was removed to this Court on December 24, 2003. The Court ruled on August 19, 2004, that the dispute was subject to an arbitration clause as follows:

> If we and you disagree on the value of the property or the amount of the loss, either party may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. . .

(Complaint at ¶ XIII.) Pursuant to the Federal Arbitration Act, the Court ruled to enforce the arbitration clause and stayed the case, pending arbitration in accordance with the contract. Specifically, the Court granted the Plaintiff's Motion to Compel Appraisal and Appointment of Appraiser and denied the Defendant's Motion to Dismiss or in the Alternative Motion for Summary Judgment.

On December 23, 2004, the Defendant filed a Motion to Vacate or Modify the Stay and a Motion for Summary Judgment, arguing that the Plaintiff breached the policy's cooperation clause.

On February 22, 2005, the Court found the Defendant's motions were a re-hash of its arguments presented in opposition to the Motion to Compel the Appraisal. The Court noted that it appeared that the parties were at odds regarding the appointment of their respective appraisers, but that it had not received a motion to disqualify the Plaintiff's appraiser as impartial in spite of Defendant's assertion that such a motion was being simultaneously filed with its request to lift the stay and motion for summary judgment. The Court denied both. The Court reminded the Plaintiff that if he refuses to disclose information that is necessary for appraisal of loss by the designated appraisers, it would entertain the Defendant's reurging of its motion to vacate the Order of appraisal and allow Defendant to file its motion for summary judgment.

On June 20, 2005, the Defendant filed the Motion to Disqualify the Plaintiff's appraiser. Defendant's assertion that Plaintiff's appraiser, Mr. John Hall, is not disinterested nor impartial is based on Plaintiff's agent, Mr. O'Toole's, refusal to respond to a subpoena for information regarding his relationship with Mr. Hall. On August 16, 2004, Mr. O'Toole had responded that it would be too burdensome and time consuming and would raise confidentiality and privacy concerns to provide the requested information, which was:

> All written records of any nature identifying how much money has been paid by [O'Toole,] [his] firm, or his clients (insured for whom [h]e adjusted claims) to John Hall in the past 5 years for his services as an appraiser on behalf of an insured.
>
> All written records of any nature identifying the percentage of claims adjusted by James F. O'Toole Company, Inc. in the past 5 years in which James F. O'Toole Company, Inc. employs, recommends, nominates or appoints John Hall as an appraiser, identifying specifcally the number of claims in which an appraiser has been employed, recommended, nominated or appointed and the number of claims in which that individual is John Hall.

(Defendant's Motion to Disqualify at Ex. 4: March 15, 2005, 1 at 4, ¶27.)

Defendant argues that O'Toole's responses demonstrate there is a relationship between Hall and him, and that he is unwilling to disclose such information.

On July 18, 2005, Mr. Hall prepared an affidavit attesting to his impartiality and disinterest in the case. Specifically, Mr. Hall attests that he has no financial stake in the outcome of the Old Tymers appraisal, and that he is paid hourly by the insured and not on a contingent fee or on any basis involving a percentage of the recovery by the insured. He works for the insured individual in first-party claims being handled by public adjusters and attorneys. He attaches a copy of his retainer agreement with Plaintiff Gahn, d/b/a Old Tymers Restaurant.

In connection with the Old Tymers' appraisal, Mr. Hall attests that he was named as the insured's appraiser on July 10, 2003. After the Defendant appointed Peter Moreno as its appraiser, Mr. Hall contacted Mr. Moreno, sent him a copy of the claim information, the parties to the appraisal documentation, and an umpire candidate list. He contacted Mr. Moreno on May 5, May 17, and May 20, 2005, to follow-up to no avail. (Plaintiff's Controverting Statement of Facts at Ex. B: Hall Affidavit.)

Plaintiff asserts that the Defendant fails to participate in the arbitration process, and therefore, Plaintiff is entitled to summary judgment. Plaintiff asks the Court to appoint an appraiser for the Insurer, Columbia Casualty, because Mr. Moreno is an employee of GAB Robins, which acted as the Insurer's claims representative. *Id.*

Defendant clarifies that it employed Ned Derickson at GAB Robins to accumulate information regarding the claim for Defendant. Mr. Derickson was not the adjuster on the claim. The adjusters were Defendant's employees: Joe Nalepa and Gil Tognarelli. (D's SOF at 44.) Mr. Derickson is no longer employed at GAB Robins. Mr. Moreno was a GAB Robins employee. Like Mr. Derickson, he is no longer employed at GAB Robins. Mr. Moreno is now employed at Crawford and Company. While at GAB Robins, he and Mr. Derickson did not work together. They did not work in the same office. (D's SOF at Ex. 37:

3

Moreno Affidavit.) Mr. Moreno claims to have had no involvement and no knowledge regarding the claim in the instant case.

Defendant challenges the veracity of Mr. Hall's attestations. Defendant has compiled the following information regarding Mr. Hall's relationship with Mr. O'Toole. A search of public records in California reflects the following information: 1) the James F. O'Toole Company is the same person as the Plaintiff's agent and adjuster, Mr. O'Toole; 2) the registered statutory agent for the James F. O'Toole Company is Mr. Hall; 3) an attorney, John F Kunath, the statutory agent for, J. Arthur Corp., a corporation in which Mr. Hall has an interest, also represented Mr. O'Toole in litigation in California. A search of court records reflects several Arizona and California cases where Mr. O'Toole, Mr. Hall, and several of the attorneys disclosed by Mr. Hall, worked in conjunction with each other as adjuster, appraiser, and counsel of record. (D's SOF at 35.)

While Mr. Hall professes to be hired on an hourly basis, paid regardless of the outcome, his invoice to Plaintiff Gahn, dated September 9, 2004, reflects zero payments. If he was hired as early as July 10, 2003, fourteen months passed without payment. Additionally, Defendant notes that the letter of retention between Hall and Gahn is dated September 9, 2004.

Conclusion:

Under the terms of the insurance contract, the parties must select competent and impartial appraisers. The two appraisers will select an umpire. If the appraisers cannot agree on an umpire, either may request that selection be made by this Court. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding.

Based on the evidence uncovered by the Defendant regarding the relationship between Mr. O'Toole and Hr. Hall, the Plaintiff has failed to comply with the provision to select a competent and impartial appraiser. The Court finds that a reasonable person would,

4

based upon the appraiser's history and past actions, objectively entertain doubts about Mr. Hall's neutrality. *See* (Plaintiff's Response at 10 (citing *Banwait v. Hernandez*, 205 Cal. App. 3rd 823 (3rd Dist. 1988).[1] Plaintiff has 10 days to select an impartial appraiser and file a notice of that selection with the Court.

Given the excessive delay that is occurring in the arbitration of this matter, the Court sets a schedule for the arbitration of this matter, including the immediate selection of an umpire to oversee compliance with the schedule.

**Accordingly,**

**IT IS ORDERED** that defendant's Motion to Disqualify Plaintiff's Appraiser (document 42) is GRANTED.

**IT IS FURTHER ORDERED** that within 15 days of the filing date of this Order, the Plaintiff shall select an impartial appraiser and file his or her name with this Court.

**IT IS FURTHER ORDERED** that within 5 days of the Plaintiff's filing this notice with the Court, the Defendant shall file any objection. In the event no objection is filed, the Plaintiff's appraiser shall be as named and Defendant's appraiser shall be Mr. Moreno.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Appointment of an Umpire (document 47) is GRANTED.

**IT IS FURTHER ORDERED** that within 10 days of appraisers being named for both parties, the appraisers shall provide the Court with the name of an umpire to be appointed in this case. In the event the appraisers can not agree to an umpire, each appraiser shall file a list of ten names of proposed umpires. Objections shall be filed within five days. Thereafter, the Court shall select an umpire for appointment in this case.

---

[1] *See also*: http://commerce.appraisalfoundation.org/html/USPAP2005/ethics_rule/htm Uniform Standard of Professional Appraisal Practice (USPAP), Conduct (appraiser must perform assignment with impartiality, objectivity, and independence, and without accommodation of personal interests.)

1 **IT IS FURTHER ORDERED** that the umpire shall file status reports with this Court every three months, commencing on the date of his appointment.

**IT IS FURTHER ORDERED** that all other pending motions are DENIED.

DATED this 22nd day of November, 2005.

David C. Bury
United States District Judge